**In Re: CONDEMNATION BY the BOROUGH OF HANOVER OF LAND and Interests in Land Owned by Hanover Public School District also sometimes known as the Hanover Borough School District and School District of the Borough of Hanover in Hanover Borough, York County, Pennsylvania For Municipal Purposes**

**Appeal of: Borough of Hanover.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.

Decided June 6, 2008.

**374**

Timothy J. Nieman, Harrisburg, for appellant.

Ronald M. Lucas, Harrisburg, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

The Borough of Hanover (Borough) appeals from an order of the Court of Common Pleas of York County (common pleas court) that sustained the preliminary objections (P.O.s) of the Hanover Public School District (School District and/or District) and declared void the Borough's declaration of taking.

On January 2, 2007, the Borough filed a declaration of taking and alleged:

1. The Condemnor is the Borough of Hanover, a Borough duly created under the Borough Code (the "Borough").

. . . .

3. The Condemnor is provided generally with the power of eminent domain for the purpose of, among other things, establishing parks, playgrounds, recreation places and other municipal purposes by the Codes and specifically by Section 302 of the Eminent Domain Code and Section 46501 of the Borough Code.

. . . .

5. The purpose of the within condemnation is to acquire the properties described below, including all buildings and improvements erected thereon, and construct appropriate facilities thereon and/or utilize such properties for parks, playgrounds, recreation places and other municipal purposes.

6. The properties to be condemned, including all buildings and improvements erected thereon ... and are more particularly described ... containing approximately 7.7386 acres (the "Moul Parcel") and ... containing approxi-

mately 4.3703 acres (the "Doubleday Parcel")....

. . . .

8. The nature of the title hereby condemned is fee simple.

9. As evidenced by the Moul Deed Parcel, the Condemnee is the School District of the Borough of Hanover. As evidenced by the Doubleday Parcel Deed, the Condemnee is the Hanover Borough School District.

10. The sum of money estimated to be just compensation for the taking of the Moul Parcel is ... $79,800.00. The sum of money estimated to be just compensation for the taking of the Doubleday Parcel is ... $172,790.00. Such amounts are based upon an appraisal for the properties conducted by Rock Commercial Real Estate, appraised as of December 18, 2006.

11. Under Section 303(b) of the Eminent Domain Code, 26 Pa.C.S.A. § 303(b), the power of taxation granted to the Borough of Hanover by the state legislature is sufficient to secure just compensation for the appropriation of properties described therein.

12. All existing public or private utility and/or drainage easements or rights-of-way and all municipal, township or state streets, roads or highways and the reversionary interests held by the Young Men's Christian Association of Hanover ... and the Young Women's Christian Association of Hanover ... are specifically excluded from this Declaration of Taking and such estates shall continue and the property being condemned hereby shall remain subject thereto.

Declaration of Taking, January 2, 2007, Paragraphs 1, 3, 5–6 and 8–12 at 1–3; Reproduced Record (R.R.) at 11a–13a.

■ On January 17, 2007, the School District preliminarily objected[1] to the declaration of taking and asserted:

1. The District is the record owner of the parcels identified ... as the "Moul Parcel" ... and as the "Doubleday Parcel"....

2. In July 2, 1962, the District entered into an agreement with the Borough to use the School Property (and other properties owned by the District) for recreational facilities (the "1962 Agreement")....

3. The parties specifically agreed that the District may unilaterally terminate the 1962 Agreement as to the Doubleday Parcel "whenever it becomes necessary to use this tract for educational purposes and provided in that event that [t]he School District ... shall relocate, if necessary, any recreational facilities thereon and make available such existing, relocated and future facilities for recreational purposes whenever there is no conflict with regular school activities"....

4. In May, 1980, the District entered into a 25–year lease with the Borough to use the School Property for recreation purposes (the "1980 Lease")....

5. The 1980 Lease replaced the 1962 Agreement.

6. The 1980 Lease terminated on May 1, 2005. From that date forward there was no written agreement permitting the Borough to use the School Property.

1. "Preliminary objections in the context of eminent domain actions serve a different purpose than preliminary objections filed in other civil actions." (citations omitted). *In Re: Condemnation by the City of Coatesville,* 898 A.2d 1186, 1189 n. 7 (Pa.Cmwlth.2006). "*In*

*eminent domain cases, preliminary objections are intended as a procedure to resolve expeditiously the factual and legal challenges to a declaration of taking before the parties proceed to determine damages.*" (emphasis added and citations omitted). *Id.* at 1189 n. 7.

Any such use by the Borough was on a permissive month-to-month basis.

7. In the alternative, if the 1980 Lease did not replace the 1962 Agreement, the District properly terminated the 1962 Agreement after the expiration of the 1980 Lease.

8. In the alternative, neither the 1980 Lease nor the 1962 Agreement are enforceable against the District as both documents ... significantly impair the District's governmental functions as set forth in the Public School Code of 1949....

9. While both the 1980 Lease and 1962 Agreement were in effect, the Borough maintained the athletic fields and sponsored public recreation programs. *Concurrently, the District used the School Property for educational purposes including the high school girl's softball program.* (emphasis added).

10. *For over 11 years, the District has used the School Property for recreation purposes as part of educational curriculum for students in the District.* (emphasis added).

. . . .

12. On or about May 2, 2005, the District obtained financing by issuing $14,000,000 General Obligation Bonds in part for renovations and additions to the Washington Elementary School and other capital expenditures of the District.

13. During 2004 and 2005 the District evaluated constructing renovations and additions as well as a new school at the existing Washington Elementary School site, as well as constructing a new elementary school at another property, but in both instances there were obstacles, some imposed by the Borough, that prevented the use of either of those sites for a new or renovated/expanded elementary school.

14. On November 22, 2005, the Board of School Directors of the District determined that the School Property would be the most appropriate site for a new elementary school and associated facilities.

. . . .

18. On December 27, 2006, the District submitted a revised land development plan to the Borough for the construction of an elementary school with associated facilities on the School Property....

. . . .

22. The District has at all relevant times used the School Property for public use.

23. The District has the authority, through its Board of School Directors to determine whether and where to construct school facilities under the Public School Code of 1949....

. . . .

26. *Condemnor's [Borough's] true purpose of the condemnation is to dispossess the District of its property so as to prevent the development of the School Property with an elementary school, which is an improper purpose.* (emphasis added).

. . . .

30. *The Borough does not have the power under Borough Code §§ 1501–1503, 52 P.S. 46501–46503 to acquire land devoted to public purposes (as opposed to private property) for the creation of Borough recreational facilities.* (emphasis added).

31. *The Borough does not have the power under Borough Code §§ 2701–2705, 52 P.S. 47701–47705 to acquire land devoted to public purposes (as opposed to private property) for the creation of Borough recreational facilities.* (emphasis added).

Preliminary Objections of the Hanover Public School District to Declaration of Taking Filed by the Borough of Hanover, January 17, 2007, Paragraphs 1–10, 12–14, 18, 22–23, 26, and 30–31 at 1–6; R.R. at 23a–28.

The Borough responded to the District's P.O.s and asserted that "the public will benefit from the continued utilization of Moul Field for parks, playgrounds, recreation places and other municipal purposes as is the stated purpose for the Borough's Declaration of Taking." Response of the Borough of Hanover to the Preliminary Objections of the Hanover Public School District, February 6, 2007, Paragraph 28 at 8; R.R. at 57a. In New Matter, the Borough stated that "[t]he School District fails to state a claim upon which relief can be granted." Response, New Matter, Paragraph 32 at 9; R.R. at 58a.

The common pleas court sustained the School District's P.O.s and concluded:

School [District] has alleged, inter alia, that Borough cannot take public property through eminent domain from another public entity; Borough is limited solely to the taking of private property. A brief review of Title 53 P.S. § 46501 clearly supports School's [District's] position. . . .

. . . .

*Under the plain language of the statute, Borough's grant of power from the legislation does not include the power to seize lands belonging to School [District].* As such, Borough's attempt to seize the land through the instant taking is beyond the limitations of the grant of power given to Borough by the legislature.

One need not look far to appreciate the merits of the legislature's decision to limit a borough's authority in this fashion. . . . To allow Borough to seize land in the public trust, without check, would allow it to circumvent established legal procedures for land use management.

Opinion of the Common Pleas Court, March 12, 2007, at 2–3.

## I. Whether The Borough Lacked The Statutory Authority To Acquire Public Property From The District Through Eminent Domain Proceedings?

■ Initially, the Borough contends[2] that property devoted to one public use may be taken for another public use as long as the taking will not materially impair or interfere with the existing use and will not result in detriment to the general public.[3] *Marple Township v. Marple*

---

2. Where a common pleas court has either sustained or overruled preliminary objections to a declaration of taking, this Court's review is limited to a determination of whether the common pleas court abused its discretion or committed an error of law. *In re Condemnation of 110 Washington Street, Borough of Conshohocken, Pennsylvania by Redevelopment Authority of County of Montgomery, for Urban Renewal Purposes*, 767 A.2d 1154 (Pa. Cmwlth.2001).

3. Specifically, the Borough raised the following issues in its Statement of Questions Involved:

1. Should the preliminary objections of a school district to a declaration of taking filed by a borough be granted on the basis that a borough does not have legal authority to acquire public property from the school district by eminent domain?

2. Does 53 P.S. § 46501 prohibit a borough from exercising eminent domain over public lands belonging to a school district?

3. May a borough only take private property through eminent domain for purposes of establishing a park or playground?

4. Is a borough's taking of public property from a school district illegal despite the legal standard, as recognized in Pennsylvania judicial precedents, that 'property devoted to one public use may, under general statutory authority, be taken for another public use, when the taking will not materi-

*Newtown School District,* 856 A.2d 225 (Pa.Cmwlth.2004) and *In re Condemnation Proceeding by the Township of Lower Macungie, Lehigh County,* 717 A.2d 1105 (Pa. Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 643, 738 A.2d 458 (1999).[4] This Court shall address seriatim whether *Marple Township* and *Lower Macungie* control.

### A. The Marple Township Decision

In *Marple Township,* Marple Township (Marple Township) had filed a declaration of taking against the Marple Newtown School District (Newtown School District) so as "to acquire land for the purpose of erecting public buildings, public works, playgrounds and recreational areas." *Id.* at 226–27. Newtown School District filed preliminary objections and alleged, among other things, that "the Township lacks the power to condemn the subject property under the First Class Township Code [5] ... the Township lacks the authority to condemn any portion of the subject property under the Public School Code of 1949" [6] [and that] "the Township is barred by common law from condemning any portion of the subject property, which was devoted to a public use and used for

public purposes on the date of condemnation...." *Id.* at 227. The Court of Common Pleas of Delaware County overruled Newtown School District's preliminary objections.

On appeal, this Court affirmed and addressed the pertinent issues raised before the common pleas court:

> Section 2803 of the First Class Township Code, [53 P.S. § 57803,] provides as follows:
>
> > *Townships may enter upon an appropriate private property and also land heretofore granted or dedicated to public use or other use within the limits of such township, and which is no longer used for the purpose for which the same was granted or dedicated for the erection thereon of a town hall, fire house, lockup, and such other public buildings as are necessary for public purposes.*
>
> No land or property used for any cemetery, burying ground, public or parochial schools, educational or charitable institution ... shall be taken or appropriated by virtue of any power contained in the preceding paragraph.

---

ally impair or interfere with, or is not consistent with, the use already existing, and is not detrimental to the public.'?
Borough's Brief, Statement of Questions Involved, at 3.

4. The Borough also cites to our Pennsylvania Supreme Court's decision *In re the Borough of Edgewood,* 318 Pa. 268, 178 A. 383 (1935). In *Borough of Edgewood,* the Borough of Edgewood had sought an appointment of viewers in order that "the bed of the proposed street is laid down on the lines of an existing passageway" on property that belonged to the Western Pennsylvania School for the Deaf (Appellant). *Id.* at 269, 178 A. at 383. Appellant challenged the appointment of viewers and argued that it was "a public charitable institution, part of the school system of the State, [was] largely supported by public funds

appropriated by the Commonwealth for the purpose, and for that reason all its property [was] immune from taking by the borough under the right of eminent domain." *Id.* at 269, 178 A. at 383. Our Pennsylvania Supreme Court rejected this argument and concluded that in the absence of any statutory authority to the contrary, the public use of one property may be taken for another public use. Because this Court cited and referenced *Borough of Edgewood* in *Marple Township* and *Lower Macungie,* any further analysis of the *Borough of Edgewood* will be confined to those cases.

5. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502.

6. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2701.

Herein, the trial court found, based on the record that the subject property was within the [Marple] Township's limits and was no longer being used for the educational purposes for which it seemingly was acquired. *Therefore, the [Marple] Township had the authority under the First Class Township Code to exercise the delegated power of eminent domain to procure the subject property....* Based on this Court's review of the record, we conclude that the trial court's findings in this regard are supported by substantial evidence....

. . . .

Next, the School District [Newtown] argues that its right and power under the Public School Code supercedes the Township's alleged power and right to condemn the property.... The School District [Newtown] argues further that *the Supreme Court has held that property devoted to one public use may be taken for another public use only if the taking will not materially impair or interfere with or is not inconsistent with the use already existing and is not detrimental to the public.* See *In re the Borough of Edgewood,* 318 Pa. 268, 178 A. 383 (1935).

. . . .

We agree with the School District [Newtown] that it has certain duties and rights under the Public School Code. *We also agree that property devoted to one public use may be taken for another public use only if the taking will not materially impair or interfere with or is not inconsistent with the use already existing ... and is not detrimental to the public.* However, due to the fact that the School District [Newtown] had listed the property for sale through a real estate broker prior to the filing of

the [Marple] Township's declaration of taking, the School District's [Newtown's] contentions are disingenuous at best. By listing the subject property for sale, it is clear that the School District [Newtown] believes that the subject property is no longer needed to facilitate its present or projected purposes .... (emphasis added and citations and footnotes omitted).

*Id.* at 227–29.

### B. The Lower Macungie Decision

In *Lower Macungie,* the Township of Lower Macungie [Lower Macungie Township] had filed a declaration of taking "to acquire a permanent easement on the subject tract [7] for a public road, an extension of Millcreek Road, and installation and use of public utilities." *Id.* at 1106. East Penn School District's preliminary objections were overruled by the Court of Common Pleas of Lehigh County which concluded that "because no building used as a public or parochial school or an educational or charitable institution currently occupied the subject property, the township [Lower Macungie] was not precluded from placing a road through said property." *Id.* at 1106. Further, the court found that "since the [East Penn] school district acquired the subject property in 1991, it had been used for private farming with no immediate plans for the construction of school facilities" and that "the [East Penn] school district intended ultimately to use the property for community recreational purposes rather than for school-related facilities." *Id.* at 1106.

On appeal, East Penn School District argued:

---

7. The East Penn School District (East Penn School District) had acquired the subject tract on November 4, 1991, from the estate of Aileen Shiffert.

[U]nder The Second Class Township Code [8], the [Lower Macungie] township lacks authority to condemn the [East Penn] school district's public property. In this regard, the [East Penn] school district relies upon Section 2304(d) of The Second Class Township Code, 53 P.S. § 67304(d), as prohibiting the placement of a road 'through any grounds occupied by a building used ... as a public or parochial school, educational or charitable institution ... unless the consent of the owner or corporation or person controlling the premises is first secured.' Finally, under the Public School Code, the [Lower Macungie] township lacks authority to appropriate the school district's property.

. . . .

Issues analogous to those now before us arose in Edgewood Borough, which preceded enactment of the Eminent Domain Code, but which is still applicable, especially on matters not addressed by the Eminent Domain Code. In *Edgewood Borough*, the Supreme Court reasoned that *'in the absence of some statutory provision expressly or by implication forbidding it,* property devoted to one public use may, under general statutory authority, be taken for another public use, when the taking will not materially impair or interfere with, the use already existing, and is not detrimental to the public.' *Id.* at 269, 178 A. at 384.

In the present case, no school building occupied the subject tract at the time of the [Lower Macungie] township's condemnation. *In fact, the subject tract, although owned by the [East Penn] school district was being privately used as farmland, which use negates the [East Penn] school district's assertion of* the property's public rather than private character. ...

. . . .

... [W]e conclude that although the subject tract is owned by the [East Penn] school district, the latter cannot block the [Lower Macungie] township from taking a portion of said tract for construction of a needed roadway, considering that no school structure has yet been built upon the subject tract, and that, *in any event, the [Lower Macungie] township's proposed road would not prevent construction of school facilities in the future.* (emphasis added and footnote and citations omitted).

*Lower Macungie,* 717 A.2d at 1106–08.

### C. Whether Marple Township And Lower Macungie Control The Present Controversy?

First, *Marple Township* and *Lower Macungie* involved "The First Class Township Code" and "The Second Class Township Code." Here, the applicable code is "The Borough Code" (Borough Code).[9]

Section 1501 (exercise of eminent domain) of the Borough Code, 53 P.S. § 46501, provides:

In the laying out, opening, widening, extending, vacating, grading, or changing the grades or lines of streets; the construction of bridges, and the piers and abutments therefore ... *the establishing of parks, playgrounds, and recreation places* ... and for all other purposes authorized by this act, *a borough may enter upon, appropriate, injure, or destroy, **private lands,** property or material,* according to the proceedings set forth in the law governing eminent domain. (emphasis added).

---

8. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701.

9. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 45101–48501.

The clear language of Section 1501 of the Borough Code grants statutory authority to a borough to exercise the right of eminent domain in those circumstances where **private** land or property is involved. No statutory provision in the Borough Code grants a borough the right to condemn **public** land or property.[10] "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Second, *Marple Township,* is distinguishable from the present matter because Marple Township had the statutory authority under Section 2803 of "The First Class Township Code," 53 P.S. § 57803, to exercise its right of eminent domain to enter property *"dedicated to public use"* for the erection of "public buildings" used for public purposes. Section 2803 of "The First Class Township Code" did not authorize the taking of property or land used for *"public or parochial school, educational or charitable institution."* In *Marple Township,* this Court emphasized that the land in question was not used for a public school, an educational or charitable institution and that Newtown School District, in fact, indicated its intention not to keep the property for future educational purposes. Otherwise, the judicial review in *Marple Township* might have reached a different result. Unlike in *Marple Township,* here, the District consistently evidenced its intent to use the public property to build a school building, and filed development plans with the Borough prior to the Borough's exercise of the power of eminent domain.

Third, in *Lower Macungie,* Lower Macungie Township had the statutory authority pursuant to Section 2304 of "The Second Class Township Code", 53 P.S. § 67304, to *"lay out"*, *"open"*, *"widen"*, *"straighten"*, *"vacate"* and *"relay all roads and bridges"* throughout the township. Section 2304 of "The Second Class Township Code" prohibited Lower Macungie Township from constructing a road *"through any grounds occupied by a building used as a ... public or parochial school, educational or charitable institution"* without the consent of the owner. This Court concluded that because the land in question was privately used as farmland, the character of the use was "private", no consent was required. In any event, this Court concluded that Lower Macungie Township's construction of the proposed road would not prevent East Penn School District from future construction of school facilities. Unlike in *Lower Macungie,* here, the Borough's taking would clearly preclude the District from any development of its land for educational purposes presently and in the future.

As the common pleas court astutely noted:

Moreover, allowing one governmental body to seize land from another is tantamount to taking from the people in the name of the people, for the benefit of the same people from whom the land was taken. *Allowing this to transpire, in essence, would be to empower Borough as a super school board, challenging School's [District's] decisions regarding the use of the land whenever School's [District's] decisions differed from its own. Those individuals elected to determine the best interest of school children should not be subverted by another group elected to perform the wholly dif-*

---

10. This Court notes that the Borough Code was enacted in 1965 thirty years after the *Borough of Edgewood* was decided.

*ferent function of providing municipal services to the people.* (emphasis added).

Opinion of the Common Pleas Court at 3.

The common pleas court did not err or abuse its discretion when it determined that the Borough lacked the statutory authority to take the District's property.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 6th day of June, 2008, the order of the Court of Common Pleas of York County, in the above-captioned matter, is affirmed.